ST. CLAIR *v.* STATE.

Opinion delivered September 24, 1923.

1.  CRIMINAL LAW—FORMER CONVICTION—WHEN DEFENSE OF NOT AVAILABLE.—Where separate sales of intoxicating liquors to A and B were made by defendant at the same time, the fact that, in a prosecution for sale to A, B testified regarding the sale to himself does not make the defense of former conviction available in a subsequent prosecution for selling to B, when in the former trial the prosecution expressly elected to try the charge of selling to A, and the sale to B was not made an issue.

2. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE.—Where sales of intoxicating liquor to A and B were coincident with each other, but there was no concert of action between them regarding purchase or payment, evidence *held* to warrant a finding that there were separate sales.

3. CRIMINAL LAW—INSTRUCTION—WEIGHT OF EVIDENCE.—Where the State elected to try defendant on a charge of selling intoxicating liquor to A, a remark of the court that the testimony of B regarding a sale by defendant to him at the same time could be considered only in reaching a conclusion as to the guilt or innocence of defendant on the charge of a sale to A, and not for the purpose of convicting for a sale to B, was not error, as expressing an opinion on the weight of the evidence.

4. INDICTMENT AND INFORMATION—DISQUALIFICATION OF GRAND JUROR.—Under Crawford & Moses' Digest § 3030, no indictment can be quashed because a grand juror failed to possess the qualifications required by law.

Appeal from Johnson Circuit Court; *J. T. Bullock*, Judge; affirmed.

*Paul McKennon*, for appellant.

*J. S. Utley*, Attorney General, *John L. Carter*, *Wm. T. Hammock* and *Darden Moose*, Assistants, for appellee.

McCULLOCH, C. J. Appellant has prosecuted an appeal from each of two judgments of conviction of the crime of selling whisky, but, as the cases are similar, the attorneys have, by consent, briefed them together, and the two cases will be disposed of in one opinion.

There are two separate indictments charging the sale of whiskey on the same day, but the cases were tried on different days of the term of court. It was the contention of the prosecuting attorney that two separate offenses were involved, and such is the contention of the Attorney General now, but counsel for appellant contends that there was only one offense committed, if any, and in the second trial there was a plea of former conviction.

In the first case which was tried the State relied for conviction on an alleged sale of whiskey to Jim Dickerson and C. Y. Jones, and in the second case the

State relied on an alleged sale to Mon Patterson and Joe Chandler. The sales were, according to the testimony, consummated at the same time. The facts in the cases are as follows: On the day in question Dickerson, according to his own testimony, met appellant on the street in Clarksville and asked him if he knew where whiskey could be obtained, and appellant replied that it could be found in a little hollow about five miles from Clarksville, near a place called Hudson Springs. According to Dickerson's testimony, nothing was said between them about paying for the liquor. Dickerson called Jones, and the two got into Dickerson's car and drove out to the designated place and searched for the liquor, but found none. They returned to their car and found that they had tire trouble, and while engaged in repairing the tire Patterson and Chandler drove up in another car, and, after getting out of the car, went to a thicket near by to search for whiskey.

Patterson testified that he applied to a man in Clarksville, with whom he was unacquainted, and had never seen before nor since, and inquired for whiskey, and the man told him that whiskey could be found in a thicket out at Hudson Springs. According to Patterson's testimony, there was no further conversation about the sale of liquor or about paying anything for it, except that the man told Patterson that, after he found the liquor and drove back toward town, he would meet a man on horseback, who would stop as soon as they met, and Patterson was directed to pay the man for the whiskey when they met on the road. Patterson testified that he was not acquainted with this man, but that it was a man who had on a soldier's uniform. Patterson called Chandler, and they went out together in the car and drove to the place where they were directed, finding Dickerson and Jones when they got there. After stopping their car, they went to the thicket to which they were directed, and, after making a search, they found two gallons of whiskey, in four half-gallon fruit jars.

Dickerson and Jones were near them at the time, but did not see them when they found the liquor. Patterson and Chandler carried the liquor back to their car, and, after putting it in, they drove up to where Dickerson and Jones were engaged in repairing their car, and one of the jars, containing a half-gallon of liquor, was delivered to Dickerson and Jones, and the other three jars were retained by Patterson and Chandler. The car in which Patterson and Chandler were riding was found to be slightly out of repair when they started back to town, and, after repairs on both cars had been made, the whole party started back to town, Patterson and Chandler driving in front, and the other car following close behind. After driving about two miles in the direction of Clarksville they met appellant riding horseback, and, as soon as they approached each other, appellant stopped, and the cars were also stopped. Without anything at all being said, according to the testimony, Patterson and Chandler paid appellant fifteen dollars for the whiskey they got, and Dickerson and Jones paid appellant six dollars for the whiskey they got.

Appellant did not testify in the case, but all of the other parties named—Patterson, Chandler, Dickerson, and Jones—testified that nothing was said when the money was paid. Dickerson testified that he had been acquainted with appellant for a number of years, and identified him as the man who gave him the directions in Clarksville as to where the liquor could be found and as the man to whom the payments for the whiskey were made.

In the first case tried the prosecuting attorney introduced as witnesses Dickerson and Jones, and then rested the case, relying entirely upon their testimony and upon the alleged sale of whiskey to those two witnesses. Thereupon counsel for appellant introduced Patterson as a witness and drew from him a statement of the facts recited above. At the conclusion of Patter-

son's testimony the following colloquy occurred between the prosecuting attorney and the court:

"Mr. Rorex (prosecuting attorney): I am relying on the testimony of Jones and Dickerson, and upon that alone. Court: The court will instruct the jury that this testimony is incompetent, except for the fact that it may show the circumstances of the man's doing business, and what he is following, and that you are not trying him and will not find him guilty for selling to this witness, Patterson and Chandler. The testimony is not introduced for that purpose."

Appellant's counsel also called Chandler and introduced him as a witness, and at the conclusion of his testimony the following occurred:

"Mr. Rorex: I want to ask the court at this time to tell the jury not to convict on the testimony of Joe Chandler, as upon the testimony of Mun Patterson. The State relies upon the sale made to Jones. Court: The court instructs the jury that the State is relying for a conviction in this case on the sale to Jones and Dickerson and not to Patterson and Chandler, and that this testimony is not admissible for consideration as to the guilt of the defendant in selling to Jones and Dickerson further than it may be a circumstance, and you may consider it for whatever light it might throw on the truth or falsity of the charge in general, but not for the purpose of conviction."

Appellant's counsel objected to these rulings and statements of the court in the presence of the jury, and saved exceptions.

The court, in its final instructions to the jury, stated that the State relied solely on the alleged sale to Dickerson and Jones, and that the jury "shall only consider his guilt or innocence as to that particular transaction."

On the trial of the other case the State introduced Patterson and Chandler, and announced its reliance for conviction solely on their testimony and the sale alleged to have been made to them. Appellant pleaded former

conviction, and introduced the record in the former
trial, which included the testimony of all four of the
parties mentioned. The contention is now, as before
stated, that the facts of the case only constitute one of-
fense—a joint sale to all four of the parties. We are
of the opinion that, under the facts of the case, there
were two separate offenses—at least the jury might
have so found—and that the State was entitled to make
an election, after refraining from introducing all of the
witnesses to make out a case for two separate convic-
tions. The case is ruled in this respect by our decision
in *Turner* v. *State,* 130 Ark. 48, where, in a prosecution
for selling liquor, the State relied on an alleged sale to
a particular individual, and expressly made its election
to prosecute for that offense, but, for the purpose of
showing the circumstances, and character of the liquor
which was sold, introduced other witnesses, who testi-
fied about other sales. The court in the trial directed
the jury to consider the testimony only for the purpose
of ascertaining the guilt or innocence of the accused
with respect to the alleged sale to the particular individ-
ual. Subsequently, in the trial of the defendant for
sales to persons who had been thus introduced as wit-
nesses in the former trial, there was a plea of former
conviction, and this court held that the trial court proper-
ly refused to sustain the plea. In disposing of the case
here we said:

"A plea of former acquittal will not be sustained
unless it affirmatively appears that the prosecution in
the case where the plea is interposed is for the same of-
fense as that for which the defendant has already been
acquitted."

The case of *Beck* v. *State,* 141 Ark. 102, is also clear-
ly in point, and was the trial of a liquor case. There
was a plea of former conviction and an attempt to sus-
tain it by showing that the witness on cross-examination
in the former trial, was asked by counsel for accused
in regard to the sale involved in the last trial, but the

attorney for the State did not introduce any testimony, and there was not, in fact, any testimony introduced by the State tending to establish the guilt of the accused for the offense on which he was last tried. In that case we said: "It is only where, in such cases, there is evidence introduced for the purpose of sustaining the charge, ·that the judgment either for conviction or acquittal operates as a bar to further prosecution." As we have already seen, the State did not, in the present case, introduce any testimony to sustain the charge of a sale involved in the second charge. On the contrary, the prosecuting attorney announced his express election to try the accused on the charge of selling to Dickerson and Jones. The sales were coincident with each other, but it was not a joint sale, according to the testimony, to all of the parties named. There was no concert of action between the parties, except that the liquor was discovered in the search made by Patterson and Chandler, but Dickerson and Jones took the part they desired and paid for it separately. Each of the pair of purchasers had made their separate arrangements for the purchase of the liquor, and the evidence in each case warranted the inference that there was a prearrangement between the purchasers and appellant. It is true that the negotiations made by Patterson and Chandler were not directly with appellant, but were conducted with a stranger "in soldier uniform;" but when the whole testimony is considered together it is evident that the arrangement was made for the sale of appellant's liquor, and the latter in fact collected the purchase money from Patterson and Chandler. In the other case, as we have already seen, Dickerson actually made his negotiations with appellant and paid the money to appellant. The fact that appellant stopped in the road as soon as he met the parties in the cars and received the money warrants the inference that he was the party to the original transaction and that he would so conduct himself as had been foretold by the man "in soldier uniform."

The court submitted the question to the jury as to whether or not the sale was a joint one to all of the four parties, or whether there were two separate sales, and we think the court was correct in doing so—at least that there was no prejudice to appellant in doing that. Certainly the testimony warranted the jury in finding that there were two separate sales, and we need not stop to inquire whether there was enough testimony to justify the conclusion that the sales were joint so as to constitute one transaction.

It is further contended that prejudicial error was committed in the court's remark to the jury in announcing its ruling in regard to the introduction of the testimony of Patterson and Chandler in the first trial. We think there was nothing improper in the statement of the court, which amounted, in effect, only to an announcement that, after the prosecuting attorney had elected to try the case solely on the charge of the sale to Dickerson and Jones, the testimony of the other two witnesses could only be considered in reaching a conclusion as to the guilt or innocence of the defendant on that charge, and not for the purpose of convicting the accused on a charge of selling to Patterson and Chandler. It was not an expression of the court's opinion on the weight of the evidence in any of its phases.

There was a motion in each case to quash the indictment on the ground that one of the grand jurors failed to possess the necessary qualification in that he was not a citizen and elector of the State. The statute precludes an inquiry into that question for the purpose of quashing an indictment. Crawford & Moses' Digest, § 3030; *Calloway* v. *State,* 120 Ark. 204; *Borland* v. *State,* 158 Ark. 37.

The record is free from error, and the evidence is sufficient to sustain the verdict, so the judgment in each case is therefore affirmed.